1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   JESSICA MARIE WEBER,                         NO.  C12-165-JPD

9                    Plaintiff,

10          v.                                     ORDER

11   MICHAEL J. ASTRUE, Commissioner of
     Social Security,

12
                     Defendant.
13

14          Plaintiff Jessica Marie Weber appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Commissioner's

19   decision is REVERSED and REMANDED for further administrative proceedings.

20                    I.       FACTS AND PROCEDURAL HISTORY

21          Plaintiff was born in 1981 and was 27 years old on the alleged disability onset date.

22   Administrative Record ("AR") at 138, 142.  She has a high school education and received

23   medical administration assistance training at a technical school.  AR at 34.  Her past work

24   experience includes employment as a receptionist, medical records technician, cashier, and

ORDER - 1

sales clerk.  AR at 47-48, 175.  Plaintiff was last gainfully employed in September 2008.  AR
at 158.

On September 29, 2008, plaintiff filed applications for DIB and SSI, alleging an onset
date of September 3, 2008.  AR at 138-43.  Plaintiff asserts that she is disabled due to diabetes,
fibromyalgia, migraine and tension headaches, cervical disc disease, depression, and anxiety.
Dkt. No. 18 at 1.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 60-
66, 69-72.  Plaintiff requested a hearing which took place on June 18, 2010.  AR at 27-55, 73-
74.  On July 28, 2010, the ALJ issued a decision finding plaintiff not disabled.  AR at 11-21.
Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR
at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is
defined by 42 U.S.C. § 405(g).  On December 2, 2011, plaintiff timely filed the present action
challenging the Commissioner's decision.  Dkt. No. 4.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§
405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of
social security benefits when the ALJ's findings are based on legal error or not supported by
substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th
Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is
such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750
(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Weber bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.      DECISION BELOW

On July 28, 2010, the ALJ issued a decision finding the following:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.      The claimant has not engaged in substantial gainful activity since September 3, 2008, the alleged onset date.

3.      The claimant has the following severe impairments:  diabetes, fibromyalgia, headaches, dysthymia, and an anxiety disorder not otherwise specified.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the physical residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes, or scaffolds, occasionally crawl, and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Also, the claimant should avoid concentrated exposure to vibration and to workplace hazards, such as proximity to unprotected heights and moving machinery, as well as, pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation.  As to mental residual functional capacity, the claimant can perform tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes, and is able to meet moderate, but not fast production demand expectations.

ORDER - 5

6.     The claimant is capable of performing past relevant work as a cashier and sales clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.     The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2008, through the date of this decision.

AR at 13-20.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ improperly rejected the medical opinions of the treating providers and consultative physicians about the plaintiff's impairments.

2.     Whether the ALJ improperly failed to recognize the plaintiff's cervicogenic disc disease as a severe impairment.

3.     Whether the ALJ improperly weighted the medical opinion of the non-examining state doctors.

4.     Whether the ALJ improperly rejected the plaintiff and lay witness testimony without clear and convincing reasons.

5.     Whether the ALJ failed to properly follow SSR 96-8p when determining the plaintiff's residual functional capacity.

Dkt. No. 18 at 2.

## VII.     DISCUSSION

A.     The ALJ Did Not Err in Determining Plaintiff's Cervicogenic Disc Disease Was Not a Severe Impairment at Step Two.

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

1    severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

2    effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security

3    Ruling ("SSR") 85–28). "[T]he step two inquiry is a de minimis screening device to dispose of

4    groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153–54).

5         To establish the existence of a medically determinable impairment, the claimant must

6    provide medical evidence consisting of "signs — the results of 'medically acceptable clinical

7    diagnostic techniques,' such as tests — as well as symptoms," a claimant's own perception or

8    description of her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005

9    (9th Cir. 2005). A claimant's own statement of symptoms alone is not enough to establish a

10   medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

11        Here, the ALJ found that the medical records showed diagnoses of cervicogenic disc

12   disease, "which medical providers deemed to be only mild." AR at 13. The ALJ noted that a

13   magnetic resonance imaging ("MRI") of plaintiff's cervical spine showed multi-level diffuse

14   annular disc bulging and moderate right sided neuroforaminal stenosis at the C5-6 level with

15   mild left neuroforaminal stenosis. AR at 13 (citing AR at 401). However, plaintiff's treating

16   physician, Llewellyn Raj, M.D., opined that this condition warranted no work related

17   restrictions. AR at 14, 380, 382. Accordingly, the ALJ found plaintiff's cervicogenic disc

18   disease did not significantly limit plaintiff's ability to perform basic work activities and,

19   therefore, was not severe. AR at 13.

20        Plaintiff argues that the ALJ erred in finding her cervical spine condition was not

21   severe at step two. Dkt. No. 18 at 16. She contends that although Dr. Raj found this condition

22   did not warrant any work related restrictions, she continued to complain of neck pain to her

23   treating physicians, Janet Jenkins, M.D., and Chad Cleven, D.O. *Id*.

24

However, a diagnosis alone is insufficient to meet her burden of establishing the existence of a severe impairment. Instead, plaintiff must show that her medically determinable impairment is severe. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff does not point to any medical evidence to support her contention that her cervicogenic disc disease significantly limited her ability to perform basic work activities. While Dr. Jenkins noted that plaintiff complained of neck pain, she did not identify any limitations associated with her complaint. Rather, on physical examination, Dr. Jenkins found "no focal deficits, cranial nerves II-XII grossly intact with normal sensation, reflexes, coordination, muscle strengthened tone," and "normal alignment and [range of motion] without gross deformity." AR at 568. Likewise, Dr. Cleven found no limitations associated with plaintiff's neck impairment. AR at 644-49. Thus, the ALJ's finding that plaintiff's cervicogenic disc disease did not significantly limit her ability to perform basic work activities is supported by the medical records and medical opinions in the record.

Even if the ALJ should have found plaintiff's cervicogenic disc disease to be a severe impairment, his failure to do so was harmless because step two was resolved in plaintiff's favor. *See Burch v. Barnhart*, 400 F.3d 676, 682–84 (9th Cir. 2005). Plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her [impairments] that the ALJ failed to consider." *Burch*, 400 F.3d at 682–84; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.").

Plaintiff asserts that a Washington State Department of Social and Health Services ("DSHS") physical evaluation performed by Rizwanna Lott, PA-C, and submitted to the Appeals Council after the ALJ issued his decision, "also noted her complaints of neck and

ORDER - 8

shoulder pain," and "includes a recommendation for pain management."[2]  *Id.* (citing AR at

680-86).  However, Ms. Lott's assessment of plaintiff's functional limitations is similarly of

questionable help to plaintiff when read in full.  Ms. Lott indicated that plaintiff's neck pain

significantly interfered with her ability to lift, handle, and carry, yet she opined plaintiff could

lift 20 pounds occasionally and 15 pounds frequently, and had no postural, motor skill, or

environmental limitations.  AR at 685-86.  As Ms. Lott's assessment is consistent with the

ALJ's finding that plaintiff retained the RFC to lift 20 pounds occasionally and 10 pounds

frequently, the additional evidence does not materially alter the ALJ's disability analysis.

Therefore, Ms. Lott's physical evaluation does not provide a basis for reversing the ALJ's

decision.  The undersigned finds the ALJ's determination that plaintiff's cervicogenic disc

disease was non-severe is supported by substantial evidence.

        B.     <u>The ALJ Erred in Evaluating Plaintiff's Credibility</u>.

        As noted above, credibility determinations are within the province of the ALJ's

responsibilities, and will not be disturbed, unless they are not supported by substantial

evidence.  A determination of whether to accept a claimant's subjective symptom testimony

requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

96–7p.  First, the ALJ must determine whether there is a medically determinable impairment

that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§

404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281–82; SSR 96–7p.  Once a claimant produces

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

---

     [2] The Appeals Council received this evidence but found no basis for changing the
ALJ's decision.  AR at 1-7.  This Court may consider new evidence submitted for the first time
to the Appeals Council in determining whether the ALJ's decision is supported by substantial
evidence.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011)
(citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451–54 (9th Cir. 1993)); *see also Lingenfelter v.
Astrue*, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007) (holding a reviewing court may consider
additional material addressed by the Appeals Council).

testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

As reported by the ALJ,

> At the hearing, [plaintiff] testified that she has about 3 migraine headaches monthly and that she has other headaches daily without relief from medications. She indicated that she cannot complete an 8 hour work day due to hip pain. She noted she can sit for varying amounts of time, from about 10 to 15 minutes to an hour. She said that she attends to personal care depending on her energy and pain. She said that she has trouble bending over. She also indicated that she has trouble lifting, worse on the right. She said that she also has daily spikes in blood sugar levels and that she does not feel "normal" after such episodes. As to mental symptoms, [plaintiff] indicated that she has trouble concentrating and that she has memory problems.

AR at 16.

The ALJ found that although plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity,

1    persistence, and limiting effects of these symptoms were not credible to the extent they were

2    inconsistent with the ALJ's RFC assessment.  AR at 16.

3                  *1.      Headaches*

4           First, the ALJ found the medical evidence did not support plaintiff's testimony that she

5    has three migraines a month and other headaches daily without relief from medication.  AR at

6    16.  The ALJ noted that prior to the alleged onset date, plaintiff saw neurologist Roman Kutsy,

7    M.D., who opined that there was a significant component of medication overuse with the

8    occurrence of her headaches.  AR at 16, 374.  Following adjustments in medication

9    management, plaintiff reported an improvement in the severity of her headaches.  AR at 16,

10   373.  During another follow-up examination, plaintiff told Dr. Kutsy that her headaches were

11   milder and responded better to medication.  AR at 16, 372.  The ALJ found, aside from

12   plaintiff's brief course of treatment with Dr. Dr. Kutsy's, plaintiff's other treatment records

13   showed "only cursory mention of headaches."  AR at 16 (citing AR at 477-509, 580-643, 644-

14   79).  The ALJ also noted that plaintiff had a negative brain MRI and CT scan.  AR at 16, 368-

15   71.  The ALJ concluded that such evidence did not support finding more limiting symptoms.

16   AR at 16.  The ALJ's determination was proper.  *See Johnson v. Shalala*, 60 F.3d 1428, 1434

17   (9th Cir. 1995) (inconsistencies between a claimant's testimony and the medical record is a

18   sufficient basis to reject the claimant's credibility); *Warre v. Comm'r of Soc. Sec. Admin.*, 439

19   F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication

20   are not disabling).

21          Plaintiff argues that once she was counseled on the proper dosage of medication, there

22   were no further references to medication overuse.  Dkt. No. 18 at 18.  Nevertheless, she

23   contends that she continued to suffer from headaches as noted by Dr. Jenkins and her CHC

24   providers.  AR at 537, 674, 535, 667, 622, 611, 607, 582, 681.  However, the treatment records

plaintiff cites actually support the ALJ's conclusion as they show only a cursory mention of headaches and do not support plaintiff's claims regarding the frequency of her headaches or the efficacy of her medications.  The ALJ did not err.

### 2. Diabetes

Regarding plaintiff's diabetes, the ALJ found plaintiff's "compliance efforts raise a credibility concern."  AR at 16.  The ALJ noted that plaintiff's treatment records showed she had high blood sugar levels and A1C levels as high as 8.8.  AR at 16, 487, 490, 554.  However, the ALJ pointed out that plaintiff's health care providers indicated that plaintiff did not follow through with medical recommendations, including exercising and making dietary changes.  AR at 16, 359 ("she is not exercising," "diet is probably not as good as it should be"), 361 ("She has not been doing good diet and exercise but that is, unfortunately, not very new."), 363 ("She has been neither exercising nor watching her diet."), 505 ("Diabetes – poor control – has not seen Dr. Liao for several months," "not caring for herself effectively").  The ALJ found such evidence "puts [plaintiff's] allegations of more limiting symptoms into question."  AR at 16.

When making a credibility evaluation, an ALJ may consider an unexplained or inadequately explained failure to follow a prescribed course of treatment.  *See Smolen*, 80 F.3d at 1284, *Tommasetti*, 533 F.3d at 1039 (holding an ALJ may properly rely on failure to follow a prescribed course of treatment); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, where a claimant provides a good reason for failing to comply with treatment, her symptom testimony cannot be rejected for not doing so.  *Smolen*, 80 F.3d at 1284; *see also* SSR 96–7p (stating that an ALJ must not draw any inferences about a claimant's symptoms and their functional effects from his or her failure to follow prescribed treatment, without first considering any explanations the claimant may provide or other information in record which may explain that failure).  Here, plaintiff argues that in July 2008, her endocrinologist, David

Liao, M.D., noted that plaintiff had a recurrence of major depression and was on medications, as a result, she was not able to check and treat her diabetes as aggressively.  AR at 359.  In addition, plaintiff points out that in January 2009 when her sugars were high, Dr. Jenkins noted that plaintiff was suffering from an upper respiratory infection and was not feeling well.  AR at 505.  Plaintiff contends that she has suffered from Type I diabetes since she was four years old, and it was unfair to isolate a few instances of noncompliance.  The Court agrees with plaintiff.  Although the medical record shows that plaintiff was not exercising or watching her diet as directed, the ALJ did not adequately consider whether plaintiff had a good reason for not complying with prescribed medical treatment.  Under these circumstances, plaintiff's failure to comply with medical treatment does not provide substantial evidence for questioning the credibility of her symptom testimony.

> ### 3. Fibromyalgia

The ALJ next found the medical evidence was inconsistent with plaintiff's alleged symptoms regarding her fibromyalgia.  AR at 16.  The ALJ acknowledged that although there are subjective accounts of tenderness and some decreased range of back and hip motion, plaintiff appeared in no acute distress, demonstrated normal gait and station, and had no deficits in sensation, reflexes, coordination, or strength.  *Id*.  While the ALJ found plaintiff's fibromyalgia was a severe impairment, the ALJ noted that the requisite number of tender points for establishing fibromyalgia were not reported.  *Id*.  In addition, the ALJ found one treatment notation which indicated plaintiff's fibromyalgia was controlled.  AR at 16, 646.

The ALJ erred by rejecting plaintiff's credibility on the grounds that her testimony was unsupported by the medical evidence.  Plaintiff argues, and the Court agrees, discounting plaintiff's credibility on these grounds is improper.  As discussed above, once a claimant has produced medical evidence of an underlying impairment, the ALJ may not discredit the

1    claimant's testimony as to the severity of symptoms solely because they are unsupported by the

2    objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

3    Because the ALJ concluded at step two that plaintiff's fibromyalgia constituted a severe

4    impairment, the ALJ could not thereafter discredit plaintiff's testimony regarding the severity

5    of her pain or symptoms on the grounds that her testimony was unsupported by objective

6    medical evidence.

7           In addition, the Court finds the ALJ's attempt to discount plaintiff's subjective

8    complaints based on the lack of corroborating objective evidence to be particularly egregious

9    in light of the ALJ's acknowledgement that plaintiff suffers from fibromyalgia.  Fibromyalgia

10   is a disease that is notable for its lack of objective diagnostic techniques.  *See Sarchet v.*

11   *Chater*, 78 F.3d 305, 306 (7th Cir. 1996).  Specifically, the Ninth Circuit has recognized that

12   "'[fibromyalgia]'s cause or causes are unknown, there is no cure, and, of greatest importance

13   to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the

14   presence or severity of fibromyalgia.'"  *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir.

15   2001) (quoting *Sarchet*, 78 F.3d at 306).  Put differently, "the absence of swelling joints or

16   other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia

17   is not disabling than the absence of a headache is an indication that a patient's prostate cancer

18   is not advanced.'"  *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (quoting

19   *Sarchet*, 78 F.3d at 307).  As a result, the ALJ erred in this case by "'effectively requir[ing]

20   objective evidence for a disease that eludes such measurement.'"  *Benecke v. Barnhart*, 379

21   F.3d 587, 594 (9th Cir. 2004) (quoting *Green-Younger*, 335 F.3d at 108).

22          This does not mean that every claimant asserting fibromyalgia receives a pass to a

23   disability finding.  It does mean, however, that an ALJ who does not consider a plaintiff

24   suffering from fibromyalgia to be credible must specifically identify what testimony is not

ORDER - 14

credible and what evidence undermines the claimant's complaints by employing ordinary techniques of credibility evaluation. *See Smolen*, 80 F.3d at 1284. Inconsistency with the medical evidence was not a clear and convincing reason for the ALJ to reject plaintiff's testimony in this case.

4.      *Mental Symptoms*

As to plaintiff's mental symptoms, the ALJ found that plaintiff's presentation and performance on exam did not support the degree of severity alleged. The ALJ noted that, despite plaintiff's testimony of concentration and memory difficulties, she presented on multiple occasions during the course of treatment with normal attention span and intact memory. AR at 17, 43-45, 507, 568, 602, 681. In addition, the ALJ noted that plaintiff admitted to doing more activities and that she was only mildly sad. AR at 17, 605, 568, 602.

The ALJ also found plaintiff's testimony was inconsistent with other mental exam findings. For example, the ALJ noted that examining psychiatrist David Sandvik, M.D, assigned plaintiff a global assessment of functioning ("GAF")[3] score of 65, indicating only mild to occasionally moderate symptoms. AR at 17, 443-46. Dr. Sandvik reported plaintiff had "a grossly normal mental status exam with only mild disturbance of immediate memory." AR at 17, 445. "She subtracted serial 7's accurately. She was able to repeat digits backward up to 5. She made correct change in 4 problems put to her. Her knowledge of current events appeared normal. She was able to recall 2 of 4 objects clearly in 3 minutes and 3 of 3 other objects clearly in 6 minutes." AR at 444. He noted that "[plaintiff] seemed to have a grossly

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic And Statistical Manual Of Mental Disorders* 32–34 (4th ed. 2000). A GAF score of 65 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*. at 34.

normal mood through most of the interview, though at times she seemed mildly dysphoric."

*Id.*  Dr. Sandvik concluded, "It is difficult to find that she could not perform work activities

consistently through a normal workday in terms of her status at exam."  AR at 445.

In addition, the ALJ relied upon a DSHS psychological evaluation by Steven Johansen,

Ph.D.  AR at 17, 549.  The ALJ noted that plaintiff was able to recall 3 items and correctly

recalled 6 digits forward and 5 digits backward.  *Id.*  She recalled 2 out of 3 items after 6

minutes, and her long term memory was intact.  *Id.*  She correctly spelled "WORLD" forward

and backward, and was able to calculate serial 7s without error.  *Id.*  The ALJ found such

evidence did not support a more restrictive RFC than for unskilled work.  AR at 17.

Although the examples cited by the ALJ here do call into question somewhat plaintiff's

credibility, the ALJ also appears to have ignored other evidence that supports her testimony.

While plaintiff noted doing more activities and mild sadness, the same medical report indicates

she was positive for anhedonia, anxious, and fearful.  AR at 605, 608.  In addition, Dr. Sandvik

noted plaintiff "has dysphoric feelings that wax and wane," "is anxious whenever she is in a

challenging or new situation," and "can have some difficulty in social and other functioning."

AR at 445.  Dr. Johansen also reported marked and severe functional limitations and assigned

her a GAF of 45, indicating serious symptoms or a serious impairment in social, occupational,

or school functioning.  DSM-IV at 34.  Thus, it is not entirely clear that such evidence does not

support a more restrictive RFC as found by the ALJ.  Accordingly, the Court finds the ALJ

failed to provide clear and convincing reasons for discounting plaintiff's credibility here.

### 5.    *Plaintiff's Presentation at the Hearing*

Finally, the ALJ rejected plaintiff's testimony because her "presentation at the hearing

[did] not substantiate her physical or mental allegations."  AR at 17.  The ALJ noted that

1  plaintiff did not exhibit any difficulty concentrating or focusing, and remained seated in no

2  evident discomfort for over 30 minutes.  *Id.*

3         However, as noted by the Ninth Circuit, an ALJ's reliance on his personal observations

4  of a claimant at the administrative hearing "has been condemned as 'sit and squirm'

5  jurisprudence."  *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (holding that the

6  denial of benefits cannot be based on the ALJ's personal observation of the claimant at the

7  hearing when the claimant's statements to the contrary are supported by substantial evidence).

8  Further, the ALJ's observations of plaintiff's comfort level at the hearing do not appear to

9  contradict her testimony as plaintiff did not sit for more than an hour.  Similarly, plaintiff's

10 ability to focus at the hearing says little about her ability to perform on a normal day-to-day

11 work basis.  According, the Court does not find this basis for the ALJ's credibility finding

12 supported by substantial evidence.

13        While the ALJ gave a number of reasons in support of his credibility assessment, the

14 ALJ's errors warrant reconsideration of plaintiff's credibility.  On remand, the ALJ is directed

15 to reassess plaintiff's credibility in light of the direction provided by this opinion.

16        C.      The ALJ's Evaluation of the Medical Evidence

17        In general, more weight should be given to the opinion of a treating physician than to a

18 non-treating physician, and more weight to the opinion of an examining physician than to a

19 non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

20 contradicted by another physician, a treating or examining physician's opinion may be rejected

21 only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

22 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may

23 not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

24 the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

1983)).  The ALJ may reject physicians' opinions "by setting out a detailed and thorough

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Rather than merely

stating his conclusions, the ALJ "must set forth his own interpretations and explain why they,

rather than the doctors', are correct."  *Id*.

"The opinion of a nonexamining physician cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a

treating physician."  *Lester*, 81 F.3d at 831.  However, "the report of a nonexamining,

nontreating physician need not be discounted when it 'is not contradicted by all other evidence

in the record.'"  *Andrews*, 53 F.3d at 1041 (quoting *Magallanes*, 881 F.2d at 752).

Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74

F.3d 967, 970-71 (9th Cir. 1996).  However, "[s]ince there is a requirement to consider all

relevant evidence in an individual's case record," the ALJ's decision "should reflect the

consideration of opinions from medical sources who are not 'acceptable medical sources' and

from 'non-medical sources' who have seen the claimant in their professional capacity."  SSR

06-03p.  "[T]he adjudicator generally should explain the weight given to opinions from these

'other sources,' or otherwise ensure that the discussion of the evidence in the determination or

decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case."  *Id.*; *see also Smolen*, 80 F.3d at

1288 (ALJ must provide germane reasons as to lay testimony).

In this case, plaintiff argues that the ALJ erred in his assessment of the opinions of

treating physician Janet Jenkins, M.D., examining psychologist Steven Johansen, Ph.D., and

nurse practitioner Janice Stern, ARNP.  Dkt. No. 18 at 13-16.  She also notes that the ALJ's

decision is devoid of any mention of the medical records of treating physicians Bina Parekh,

D.O., Chiyang Wu, D.O., and Chad Cleven, D.O. *Id*. at 14. Plaintiff further contends that the ALJ improperly weighed the medical opinions of the non-examining state agency medical consultants Jeffrey Merrill, M.D., Arthur Lowy, Ph.D., and Bruce Eather, Ph.D. *Id*. at 17.

> 1. *The ALJ Failed to Give Specific and Legitimate Reasons for Rejecting the Opinion of Treating Physician Janet Jenkins, M.D.*

Dr. Jenkins performed two DSHS physical evaluations of plaintiff. AR at 533-36, 537-40. Dr. Jenkins diagnosed diabetes type I, arthritis, fibromyalgia, depression, anxiety, insomnia, fatigue, and migraines. AR at 535, 539. She opined that plaintiff was "severely limited," and unable to work due to depression, anxiety, fatigue, migraines, and diabetes. *Id*.

The ALJ gave little weight to the opinion of Dr. Jenkins, finding her opinion was not supported by her own treatment records. AR at 18. The ALJ noted that Dr. Jenkins likely relied heavily on plaintiff's self-reports which the ALJ found not credible. *Id*. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. However, as indicated above, the ALJ improperly discounted plaintiff's credibility. Thus, Dr. Jenkins's reliance on plaintiff's subjective complaints was an insufficient basis for rejecting Dr. Jenkins's opinion. On remand, the ALJ shall reevaluate Dr. Jenkins's opinions.

> 2. *The ALJ Failed to Give Specific and Legitimate Reasons for Rejecting the Opinion of Examining Psychologist Steven Johansen, Ph.D.*

As indicated above, Dr. Johansen performed a DSHS psychological evaluation of plaintiff. AR at 543-49. He diagnosed plaintiff with dysthymic disorder and generalized anxiety disorder, and assigned a GAF score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. DSM-IV at 34. Dr. Johansen checked boxes indicating plaintiff had marked to severe functional limitations in her ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors,

1    interact appropriately in public contacts, and respond appropriately to and tolerate the

2    pressures and expectations of a normal work setting.  AR at 547.  Dr. Johansen attributed these

3    limitations to plaintiff's "impaired social judgment, decision making likely influenced by

4    emotional distress," "excessive anxiety, socially withdrawn, excessive lethargy," and tendency

5    to become "easily overwhelmed, prone to panic-like events when stressed."  *Id.*

6         The ALJ gave little weight to Dr. Johansen's opinion, finding the GAF score and

7    degree of limitation noted by the doctor to be inconsistent with plaintiff's presentation and

8    performance on exam.  AR at 18.  The ALJ noted that plaintiff was able to register 3 items,

9    recall 6 digits forward and 5 digits backward, recall 2 out of 3 items after 6 minutes, and her

10   long term memory was intact.  AR at 549.  She was also able to correctly spelled "WORLD"

11   forward and backward, and calculate serial 7s without error.  *Id.*  Contrary to the ALJ's

12   conclusion, the Court finds no inconsistency.

13        While plaintiff's exam shows adequate concentration and memory, Dr. Johansen found

14   no limitations in plaintiff's ability to understand, remember, and follow simple and complex

15   instructions, and only mild limitations in her ability to learn new tasks.  AR at 547.  However,

16   plaintiff's concentration and memory abilities say little about her ability to exercise judgment

17   and make decisions, relate appropriately to co-workers and supervisors, interact appropriately

18   in public contacts, and respond appropriately to and tolerate the pressures and expectations of a

19   normal work setting.  Thus, the ALJ's reliance on plaintiff's performance on exam was an

20   insufficient basis to reject Dr. Johansen's opinion.  As a result, the ALJ shall reevaluate Dr.

21   Johansen's opinion on remand.

22   //

23   //

24   //

ORDER - 20

3.     *The ALJ Provided Germane Reasons for Rejecting the Opinion of Nurse Practitioner Janice Stern, ARNP.*

Ms. Stern is a nurse practitioner who saw plaintiff for a psychiatric consultation on February 2, 2010.  AR at 629-32.  Ms. Stern reported plaintiff was anxious, irritable, and depressed, and had poor concentration.  AR at 631-32.  She diagnosed plaintiff with bipolar disorder and anxiety disorder, and assigned her a GAF score 45, indicating serious symptoms or serious impairment in social, occupational, or school functioning.  DSM-IV at 34.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Nurse practitioners are not acceptable medical sources who can give medical opinions.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ may evaluate the opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p.  These factors include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, as well as any other relevant factors.  *Id.*  But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources.  *Id.*

The ALJ gave no weight to Ms. Stern's opinion, finding the GAF score was not substantiated by her contemporaneous mental assessment.  AR at 18.  The ALJ noted that Ms. Stern reported that plaintiff presented with unremarkable behavior, intact memory, good judgment, and reasoning.  AR at 18-19.

1    The ALJ correctly found Ms. Stern's opinions were not substantiated by her findings

2    identified on the same report.  Although Ms. Stern diagnosed plaintiff with bipolar and anxiety

3    and assigned a GAF score of 45, her report reflects plaintiff's behavior was unremarkable,

4    affect was appropriate, memory was intact, intelligence was average, reasoning and judgment

5    were good, and her thought processes were logical.  Nurse Stern then provided no explanation

6    or evidence to support her opinion regarding the degree of plaintiff's impairments.  *See* 20

7    C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an

8    opinion, particularly medical signs and laboratory findings, the more weight we will give that

9    opinion."); *see also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any

10   physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

11   supported by clinical findings.").

12       Plaintiff argues that Ms. Stern's opinion was consistent with the opinion of Dr.

13   Johansen.  However, Nurse Stern's severe assessment contrasted notably with the assessments

14   of consulting examiner Dr. Sandvik who found only mild to moderate limitations.  AR 18-19.

15   The ALJ was entitled to resolve any ambiguities in the record, and substantial evidence

16   supports his interpretation.  In light of the above, the Court concludes that the ALJ properly

17   gave Nurse Stern's opinion no weight.

18       4.    *The ALJ Did Not Err in Failing to Discuss the Medical Records of Bina
             Parekh, D.O., Chiyang Wu, D.O., and Chad Cleven, D.O.*

19

20       Plaintiff contends the ALJ erred by failing to address or comment on the medical

21   records of Bina Parekh, D.O., Chiyang Wu, D.O., and Chad Cleven, D.O., who treated plaintiff

22   for diabetes, headaches, and fibromyalgia, and documented her complaints.  Dkt. No. 18 at 14,

23   Dkt. No. 20 at 2.  The ALJ is not required to discuss all evidence presented to him.  *See*

24   *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Lewin v. Schweiker*, 654 F.2d

631, 634 (9th Cir. 1981)).  Rather, the ALJ need only explain why "significant probative

evidence has been rejected."  *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981).

Contrary to plaintiff's argument, the record shows the ALJ specifically discussed this

medical evidence in his evaluation of plaintiff's RFC.  AR at 16-19 (citing Exs. 23 and 24).

Although the ALJ did not mention Drs. Parekh, Wu, or Cleven by name, the Court cannot say

the ALJ erred.  While an ALJ must normally "make fairly detailed findings in support of

administrative decisions to permit courts to review those decisions intelligently," the ALJ

"need not discuss all evidence presented."  *Vincent*, 739 F.3d at 1394-95.  The ALJ was not

required to discuss evidence he did not reject, and which was cumulative.  The Court also notes

the doctors did not opine that plaintiff was unable to work.  The doctors did not assess any

limitations and, therefore, there was no significant probative evidence the ALJ was required to

discuss.

Plaintiff presents nothing more than an assertion that the ALJ erred by failing to

mention the medical records of Drs. Parekh, Wu, or Cleven.  She does not explain how the

ALJ's failure to mention these records made the ALJ's evaluation of the evidence deficient or

how the records were significant or probative evidence that the ALJ must discuss.  The Court

declines to find that the ALJ erred in failing to mention these doctors.

> 5.    *The ALJ Must Reconsider the Opinions of State Agency Medical
>        Consultants Jeffrey Merrill, M.D., Arthur Lowy, Ph.D., and Bruce
>        Eather, Ph.D.*

Dr. Merrill is a non-examining state agency medical consultant who completed a

review of plaintiff's record.  AR at 510-17.  He opined that plaintiff had the RFC to perform

light work, except she could frequently climb ramps or stairs, balance, stoop, kneel, and

crouch; occasionally crawl; and never climb ladders, ropes, or scaffolds.  AR at 411-12.  In

addition, she should avoid concentrated exposure to vibration and hazards.  AR at 514.  The

ALJ afforded Dr. Merrill's opinion great weight, finding it consistent with the objective

medical evidence, including plaintiff's normal sensation, reflexes, gait, and strength.  AR at 18.

Plaintiff argues that the ALJ inappropriately relied upon Dr. Merrill's opinion.  Dkt.

No. 18 at 17.  Specifically, she contends that there is no support in the record for his opinion

that plaintiff can engage in light work.  *Id.*  The Commissioner responds that the ALJ's RFC

finding was proper because it "'took into account those limitations for which there was proper

support that did not depend on [plaintiff's] subjective complaints, which lacked credibility.'"

Dkt. No. 19 at 16 (quoting *Bayliss*, 427 F.3d at 1217).

As discussed already, the Court has determined that the ALJ failed to evaluate properly

plaintiff's credibility and the medical evidence and that such evidence must be evaluated anew.

As the ALJ's assessment of Dr. Merrill's opinion is based on his faulty evaluation of the

medical evidence, Dr. Merrill's opinion should be evaluated anew following remand of this

matter.

The state agency medical consultants, Dr. Lowy and Dr. Eather, opined that plaintiff

could understand, remember, and carry out simple and detailed instructions with occasional

public contact.  AR at 462-64, 518.  The ALJ adopted their opinion that plaintiff could

understand, remember, and carry out simple and detailed instructions, but rejected the

limitation to occasional public contact as not supported by the record.  AR at 18.  The ALJ

noted that plaintiff's treatment records and the mental assessment by Dr. Sandvik do not show

significant social difficulties.  AR at 18, 443-47, 580-643.  The ALJ's finding is not supported

by the record.  Contrary to the ALJ's finding, Dr. Sandvik indicated that plaintiff "is anxious

whenever she is in a challenging or new situation," and that "[s]he can have some difficulty in

social and other functioning."  AR at 445.  He noted that "Prozac and Wellbutrin may help her

some and should be continued and supportive counseling may help her deal with some degree

1    of stress around people."  AR at 445-46.  Likewise, as indicated above, Dr. Johansen opined

2    plaintiff had marked limitations in her ability to interact appropriately in public contacts,

3    noting, "impaired social judgment, decision making likely influenced by emotional distress,"

4    "excessive anxiety, socially withdrawn, excessive lethargy," "easily overwhelmed, prone to

5    panic-like events when stressed."  AR at 547.  Accordingly, the ALJ should reconsider the

6    opinions of Drs. Lowy and Eather on remand.

7            D.      The ALJ Erred in his Assessment of the Lay Witness Testimony.

8            Plaintiff contends that the ALJ erred in rejecting the testimony of her mother Gina

9    Weber.  Dkt. No. 18 at 21-22.  An ALJ may consider lay-witness sources, such as testimony by

10   relatives and friends.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  Such testimony regarding a

11   claimant's symptoms or how an impairment affects the ability to work is competent evidence,

12   and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.

13   1993).  If an ALJ chooses to discount the testimony of a lay witness, the ALJ must provide

14   "reasons that are germane to each witness," and may not simply categorically discredit the

15   testimony.  *Id*. at 919.

16           At the hearing, Ms. Weber testified that plaintiff is in bed four to six days per week due

17   to pain, headaches, and diabetes.  AR at 49.  She stated that plaintiff's basic health has steadily

18   declined, noting worsening headaches, pain, and memory.  AR at 50.  She also reported that

19   plaintiff has anxiety-related symptoms and that she cries easily.  AR at 50-51.

20           The ALJ rejected evidence from plaintiff's mother, finding the lack of corroborating

21   objective medical evidence coupled with plaintiff's performance on exam rendered her

22   testimony less persuasive.  AR at 19.  Because the ALJ's rejection of the lay testimony was

23   contingent on the assessment of the medical evidence and plaintiff's credibility, and because

24   this matter should be remanded for reconsideration of those issues, the ALJ should also

1    reconsider the lay testimony on remand.  In doing so, should the ALJ again reject the lay

2    testimony, he must provide reasons germane to the witness.  *See Smolen*, 80 F.3d at 1288-89.

3            E.      Remand Requires Reevaluation of the RFC and Step Five Determinations.

4            Plaintiff contends the ALJ failed to properly assess her RFC and erred at step five by

5    posing hypothetical questions to the vocational expert that did not include all of her limitations.

6    Dkt. No. 18 at 22-23.  The Court need not resolve these contentions here; the ALJ erred in

7    evaluating plaintiff's credibility and the medical opinions as discussed above, and must

8    necessarily reevaluate on remand what impact, if any, this has on plaintiff's RFC and any

9    hypothetical question that is posed at step five to the vocational expert.

10           F.      This Matter Should be Remanded for Further Administrative Proceedings.

11           The decision whether to remand for further proceedings or order an immediate award

12   of benefits is within the Court's discretion.  *Harman*, 211 F.3d at 1175-78.  Where no useful

13   purpose would be served by further administrative proceedings, or where the record has been

14   fully developed, it is appropriate to exercise this discretion to direct an immediate award of

15   benefits.  *Id*. at 1179 (noting "that the decision of whether to remand for further proceedings

16   turns upon the likely utility of such proceedings").  However, where there are outstanding

17   issues that must be resolved before a determination of disability can be made, and it is not clear

18   from the record that the ALJ would be required to find the claimant disabled if all the evidence

19   were properly evaluated, remand is appropriate.  *Id*.

20           Here, it is not clear from the record that the ALJ would be required to find plaintiff

21   disabled if the evidence described herein was properly considered.  Therefore, the Court finds

22   remand for further proceedings is appropriate to allow the ALJ to remedy the above mentioned

23   errors.

24

1

VIII.   CONCLUSION

2

For the foregoing reasons, the decision of the Commissioner is REVERSED and

3   REMANDED for further proceedings not inconsistent with the Court's instructions.

4

DATED this 3rd day of December, 2012.

5

6   _James P. Donohue_____

JAMES P. DONOHUE

7   United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 27